# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>A United States Postal Service Priority Mail parcel bearing tracking label number EJ 908 997 374 US and currently in the custody of the United States Postal Inspection Service | Case No. 5:23-MJ-00047 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

*See Attachment A*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized)*:

*See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 843(b), and 846 | See attached affidavit |

The application is based on these facts:

*See attached Affidavit*

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days*: _____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

United States Postal Inspector, Anthony H. Jacobs
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

_____
*Judge's signature*

City and state: Riverside, CA            Honorable Kenly Kiya Kato, U.S. Magistrate Judge
*Printed name and title*

AUSA: Mitchell Suliman (951-276-6026)

**AFFIDAVIT**

I, Anthony Herrera Jacobs, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of an application for a warrant to search a United States Postal Service ("USPS") Priority Mail parcel currently in the custody of the United States Postal Inspection Service ("USPIS"). The parcel, as described more fully in Attachment A, is a USPS Priority Mail Express parcel bearing tracking label number EJ 908 997 374 US, weighing approximately 13 ounces, with a return address of "Ryan Stills 2504 Taylor Rd San Bernardino, ca 92404," and a recipient address of "Ethel Jones 2300 S. La Mesa #616 Midland, Texas 79701" (the "SUBJECT PARCEL"). Attachment A is incorporated by reference herein.

2. The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of Title 21, United States Code, sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance); 846 (conspiracy to distribute or possess with intent to distribute a controlled substance); and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance) (the "SUBJECT OFFENSES"), as described more fully in Attachment B. Attachment B is incorporated by reference herein.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and

information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. **AFFIANT INFORMATION**

4.   I am a United States Postal Inspector employed by USPIS.  I joined USPIS in August 2003.  I am currently assigned to the USPIS Los Angeles Division, Narcotics Team and Parcel Task Force, which is responsible for investigating drug trafficking organizations that use parcels to distribute illegal narcotics and/or narcotics proceeds.  As part of my law enforcement duties, I have conducted over 150 parcel investigations that have resulted in the arrest of individuals who have received and distributed controlled substances, as well as the seizure of 750 parcels containing approximately 80 kilograms of fentanyl, 97 kilograms of cocaine, 613 kilograms of methamphetamine, 10 pounds of heroin and 5 gallons of PCP.  I have written over 240 search warrants on parcels and residences resulting in currency seizures of over $3 million dollars in drug proceeds.  I have used cooperating defendants in purchases of controlled buys in furtherance of federal cases.  Many of these federal cases involved the search and seizure of digital devices during the investigations.

## III. **BACKGROUND, TRAINING, AND EXPERIENCE REGARDING THE TARGET OFFENSES**

5.  Based on my training and experience as a Postal Inspector, and the experiences related to me by fellow Postal Inspectors who specialize in drug investigations, I declare as follows:

   a.  Postal Inspectors have been conducting investigations of drug trafficking via USPS Express Mail and Priority Mail since the mid-1980s.  In the early 1990s, Postal Inspectors in Los Angeles, California, and surrounding regions such as the High Desert/Low Desert areas that include Riverside and San Bernardino Counties, began conducting organized interdictions of Priority Mail Express and Priority Mail parcels suspected of containing controlled substances and proceeds from the sale of controlled substances.  Postal Inspectors also regularly examined and investigated Priority Mail Express and Priority Mail parcels.  During the 1990s, Postal Inspectors observed that the trend was for drug traffickers to send controlled substances and proceeds from the sale of controlled substances, in the form of cash, using boxes.

   b.  Although Postal Inspectors still see the use of boxes for controlled substances and cash, there has been a gradual change over the years toward the current trend of using smaller boxes, flat cardboard envelopes, and Tyvek envelopes, with proceeds from the sale of controlled substances converted to money orders.  By using money orders, drug traffickers are able to send large dollar amounts in compact form, using much

3

smaller conveyances, which lend a sense of legitimacy to the parcel.

       c.    The San Bernardino County and Riverside County areas (collectively, the "Inland Empire") are a significant source area for controlled substances. Controlled substances are frequently transported from the Inland Empire area via USPS, and the proceeds from the sale of controlled substances are frequently returned to the Inland Empire area via USPS. These proceeds are generally in the form of money orders, bank checks, or similar monetary instruments in an amount over $1,000. Based on my training and experience, I know that proceeds from the sale of controlled substances often contain the odor of controlled substances because they have been contaminated with or associated with the odor of one or more controlled substances.

       d.    Drug traffickers often use one of two USPS services: Priority Mail Express, which is the USPS overnight/next day delivery mail product, or Priority Mail Service, which is the USPS two-to-three-day delivery mail product. Drug traffickers use the Priority Mail Express delivery service because of its speed, reliability, and the ability to track the article's progress to the intended delivery point. Drug traffickers use the Priority Mail delivery service because it allows drug traffickers more time for travel between states if they decide to follow a shipment to its destination for distribution. Also, by adding delivery confirmation to a Priority Mail parcel, drug traffickers have the ability to track

4

the article's progress to the intended delivery point, as if the parcel had been mailed using the Priority Mail Express Service.

6. Based on my training and experience, and the collective experiences related to me by fellow Postal Inspectors who specialize in investigations involving the mailing of controlled substances and proceeds from the sale of controlled substances, I know that the following indicia suggest that a parcel may contain drugs or drug trafficking proceeds:

    a. The parcel is contained in a box, flat cardboard mailer, or Tyvek envelope;

    b. The parcel bears a handwritten label, whether USPS Express Mail or Priority Mail;

    c. The handwritten label on the parcel does not contain a business account number;

    d. The seams of the parcel are all taped or glued shut;

    e. The parcel emits a particular odor of a cleaning agent or adhesive or spray foam that can be detected by a human; and

    f. Multiple parcels are mailed by the same individual, on the same day, from different locations.

7. Parcels exhibiting some of these characteristics are the subject of further investigation, which may include verification of the addressee and return addresses and examination by a trained drug detection dog.

8. I know from my experience and training that drug traffickers often use fictitious or incomplete names and/or

5

addresses in an effort to conceal their identities from law enforcement officers investigating these types of cases. Indeed, it is my experience that to the extent real addresses are ever used it is only to lend a legitimate appearance to the parcel and is almost always paired with a false name.

## IV. SUMMARY OF PROBABLE CAUSE

9. On January 31, 2023, during routine parcel profiling, I detained the SUBJECT PARCEL at San Bernardino Processing and Distribution Center in Redlands, California. I, along with other Postal Inspectors, identified the SUBJECT PARCEL for additional investigation because the SUBJECT PARCEL met certain criteria common to packages containing contraband. Specifically, the SUBJECT PARCEL was a USPS Priority Mail Express box without business account numbers, and the name of sender and recipient did not appear in law enforcement databases as associated with the listed addresses. Based on the suspicious characteristics of the SUBJECT PARCEL, a trained narcotics detention dog examined the exterior of the SUBJECT PARCEL and indicated the presence of controlled substances.

## V. STATEMENT OF PROBABLE CAUSE

### A. Initial Investigation of the SUBJECT PARCEL

10. On January 31, 2023, I, along with other Postal Inspectors, located the SUBJECT PARCEL at the San Bernardino Processing and Distribution Center. In doing so, other Postal Inspectors and I saw that the SUBJECT PARCEL met some of the above-mentioned criteria for the identification of suspicious parcel. Specifically, the SUBJECT PARCEL was a USPS Priority

Mail Express box, and it did not contain a business account number.

11. On or about January 31, 2023, I used the CLEAR database to check the return and recipient address listed on the SUBJECT PARCEL and determined the following:

    a. The return address listed for SUBJECT PARCEL is "Ryan Stills 2504 Taylor Rd San Bernardino, ca 92404." CLEAR located the address and was unable to associate "Ryan Stills" to that address. The recipient address listed for the SUBJECT PARCEL is "Ethel Jones 2300 S. La Mesa #616 Midland, Texas 79701." CLEAR located the address and was unable to connect "Ethel Jones" to that address.

    **B.   Drug-Detection Dog Alerts to the SUBJECT PARCEL**

12. On or about January 26, 2023, based on the suspicious characteristics of the SUBJECT PARCEL, Riverside Police Department Detective David Bee had his trained narcotics detection dog, "Kilo," examine the exterior of the SUBJECT PARCEL. Attached hereto as Exhibit 1, and incorporated herein by reference, is a true and correct copy of information provided to me by Detective Bee regarding Kilo's training and history in detecting controlled substances.

13. The SUBJECT PARCEL was placed in an area by Detective Bee to perform a K-9 sniff with his dog Kilo. Officer Bee told me that Kilo gave a positive alert to the SUBJECT PARCEL, indicating the presence of controlled substances or other items, such as the proceeds of controlled substances, which have been recently contaminated with the odor of controlled substances.

## VI. CONCLUSION

14. For the reasons set forth above, there is probable cause to believe that the SUBJECT PARCEL, as described in Attachment A, contain evidence, fruits, and instrumentalities of the SUBJECT OFFENSES, as described in Attachment B.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
_____, 2023.

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

<u>PARCEL TO BE SEARCHED</u>

1. The following United States Postal Service Priority Mail parcel seized on January 31, 2023, at the San Bernardino Processing and Distribution Center located at 1900 W Redlands Blvd, Redlands, California, and currently in the custody of the USPIS:

   a. The SUBJECT PARCEL is a USPS Priority Mail Express parcel bearing tracking label number EJ 908 997 374 US, weighing approximately 13 ounces. The return address listed for the SUBJECT PARCEL is "Ryan Stills 2504 Taylor Rd San Bernardino, ca 92404," and a recipient address of "Ethel Jones 2300 S. La Mesa #616 Midland, Texas. The parcel was postmarked in Adelanto, California, on January 31, 2023, with paid postage in the amount of $28.75.

**ATTACHMENT B**

ITEMS TO BE SEIZED

The following are to be seized from the parcels described in Attachment A, which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy to distribute or possess with intent to distribute a controlled substance), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance):

    a.   Any controlled substances, including marijuana;

    b.   Currency, money orders, bank checks, or similar monetary instruments in quantities over $1,000; and

    c.   Parcel wrappings used to conceal items described in (a) and/or (b).

# Exhibit 1

**TRAINING AND EXPERIENCE:**

I, Detective David Bee, being duly sworn, declare and state:

I am a sworn peace officer within the meaning of Penal Code Section 830.1.

I have been a peace officer for the Riverside Police Department for 15 years. I was promoted to the rank of detective and have been serving as a narcotics detective since August of 2019. At the beginning of my career with the Riverside Police Department, I attended a six month police academy then was assigned to the patrol division where I conducted directed patrol and responded to emergency calls for service for 11 years. During this time I conducted numerous investigations involving subjects that possessed, used, sold, and transported illegal drugs. I observed, arrested, and talked to thousands of subjects while handling or assisting with these investigations.

During my time as a police officer, I was assigned to the Special Operations Division as member of the Riverside Police Department's collateral SWAT team. For those five years, I was assigned and participated in the service of several high risk search warrants, conducted surveillances, participated in undercover operations, parole and probation searches and compliance checks, and worked closely with several investigative units within the Riverside Police Department to include: The Gang Unit, Narcotics, Vice, Robbery/Homicide, and various multi-agency task forces. These assignments gave me considerable experience in interacting with and arresting known and/or admitted criminals for various offenses, including murder, robberies, narcotics, gang crimes, and burglaries/theft.

Subsequently, I was assigned to the Riverside Police Department's Neighborhood Policing Center (NPC) – Central Division POP Team. The NPC investigates and assists in the prosecution of various violations of the penal code including street level narcotics. At the conclusion of my POP assignment, I was selected as a Field Training Officer training newly hired police officers. A portion of my duties were to instruct new officers on the identification of illegal drugs, how to

investigate these types of possession/sales cases and to familiarize them with how drugs are packaged, transported, sold, and ingested.

In August of 2019, I was promoted to the rank of Detective and assigned to our Narcotics Unit where I currently work. I frequently investigate crimes related to illicit drug sales, transportation, trafficking, manufacturing and other associated drug violations. I have attended schools related to these investigations including a two week ICI Narcotics Investigations Course, a two week ICI Core Course for Investigators and a course in Street Crimes and Drug Abuse Recognition. In April 2021, I attended a one week Clandestine Laboratory Certification Course. During these trainings I have received instruction and hands on experience with how illicit drugs are manufactured, packaged, transported, sold and ingested. On multiple occasions I have purchased illicit drugs in an undercover capacity and routinely work with confidential informants during the course of my duties. I frequently interview subjects involved in the drug trade to stay current on the latest trends and have testified as a drug expert in Riverside Superior Court.

**NARCOTICS K9 TEAM DETECTIVE BEE AND K9 KILO'S TRAINING AND CERTIFICATIONS:**

In December of 2022, I attended a 5 week K9 handler's course presented by Man K9 Inc. in San Diego, CA. At the conclusion of the course, K9 "Kilo" (2 year old Belgian Malinois) and I were certified as a drug detection K9 team through Man K9 Inc. and Peace Officer Standards and Training (P.O.S.T.). K9 Kilo is trained to detect the following controlled substances:

methamphetamine, cocaine, heroin, and powder fentanyl. Certifications typically are conducted bi-annually. The most recent certification took place on 12/28/22.

In addition to bi-annual certifications, K9 Kilo's reliability and proficiency are tested on a weekly basis by Man K9 Inc. in a controlled environment. All certifications and most proficiency assessments are conducted "single blind" (where the result is unknown to the handler). Single blind certification and proficiency assessments ensure that the handler cannot "cue" the dog, as the handler does not know the result. All of K9 Kilo's certifications and training are conducted using real contraband which has been tested and confirmed as such. K9 Kilo and I train on average of 25 hours a month in the area of narcotics detection.

### WEEKLY/ DAILY TRAINING CONSISTS OF:

- Training in all areas of detection, such as vehicles, boats, large trucks and trailers, residences, warehouses, businesses, schools, storage units, currency, parcels, mail, furniture, etc.
- Training on various quantities of controlled substances, ranging from grams to multiple pounds.
- Training odors that are distracting, masking, or new and proofing him from those odors.
- Training on controlled negative (blank) testing, in which all objects or locations have no contraband present.
- Extinction training, which proofs the dog and prevents him from alerting to common items associated with controlled substances, such as plastic bags, currency both circulated and uncirculated, etc.

Upon K9 Kilo locating the odor of one of the scheduled controlled substances he is trained to detect, he will alert through numerous behavioral changes that can be seen and sometimes heard. He will slow immediately and his head will turn in the direction of the odor, then his sniff will quicken with deeper and sometime faster inhales while closing his mouth. Even if he is in the area of the odor, he is trained to find the source of the odor where it is the most concentrated. He will frequently "bracket" to find the source by moving in one direction until the odor becomes less concentrated, then change directions and return the other way. Once the odor becomes less concentrated in the other direction, he will again switch directions, narrowing the search area until the source is located. When searching, if he comes in contact with the odor as he passes, he will perform a "head check" where he quickly will swing his head back the other direction towards the odor he is trained to detect. This is a visual cue he has come in contact with the odor and will begin to bracket to find the source.

If K9 Kilo locates the source of the odor, he will give a final positive alert response. His final response is usually passive, where he is trained to stare at the source of the odor. His body and neck will tense and freeze, his ears will perk up and his tail will wag then stiffen. He sometimes will sit or scratch depending on the location of the narcotics. K9 Kilo is a fetish reward (play drive) driven canine, where only after locating the odor and giving a final response will he be praised and rewarded with his toy.

On Tuesday, January 31, 2023, US Postal Inspector Jacobs requested narcotics detection K9 Kilo and I to assist in a narcotics parcel investigation. At about 1630 hours the same day, a suspicious parcel was located. The parcel was set on the ground with other like parcels and separated by

approximately 4 to 5 feet. I ran my narcotics detection K9 Kilo in the direction of the parcel at the facility. Upon reaching the parcel in question, K9 Kilo's ears perked up, his body stiffened and he sat and stared at the suspicious parcel indicating a positive alert response. This alert signaled that the packages and/or the contents were saturated with the odor of illegal narcotics that he is trained to detect.

K9 Kilo alerted to the odor of narcotics emitting from the following:

US Postal Service parcel# EJ 908 997 374 US

Addressed to: Ethel Jones

2300 S. La Mesa #616

Midland, Texas 79701

Detective David Bee

Riverside Police Department